UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
GUARIEN VASQUEZ,                                       :
                                                       :
                              Plaintiff,               :
                                                       :           16-CV-3610 (VSB) (DCF)
              -v-                                      :
                                                       :           **OPINION & ORDER**
ANDREW SAUL,                                           :
Commissioner of Social Security,                       :
                                                       :
                              Defendant.               :
                                                       :
-------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/1/2019

Appearances:

Daniel Sylvester Jones
Charles E. Binder
Law Offices of Harry J. Binder and Charles E. Binder
New York, New York

Eddy Pierre Pierre
Pierre Pierre Law, P.C.
New York, New York
*Counsel for Plaintiff*

Allison Rovner
United States Attorney's Office
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Guarien Vasquez brings this action pursuant to § 205(g) of the Social Security Act (the "SSA"), 42 U.S.C. § 405(g), seeking judicial review of a determination by the Commissioner of Social Security (the "Commissioner")[1] that he is not entitled to Supplemental

---

[1] Commissioner of Social Security Andrew Saul is automatically substituted for defendant Carolyn W. Colvin pursuant to Fed. R. Civ. P. 25(d).

Security Income ("SSI") or Social Security Disability Insurance ("SSDI") benefits. Plaintiff and Defendant cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. On September 8, 2017, Magistrate Judge Debra C. Freeman issued a detailed and thorough Report and Recommendation ("Report" or "R&R"), recommending that Plaintiff's motion for judgment on the pleadings be denied and that the Commissioner's cross-motion for judgment on the pleadings be granted. (Doc. 20.) Before me is Plaintiff's objection to the R&R. Because I find that Magistrate Judge Freeman properly determined that the ALJ (1) appropriately declined to assign controlling weight to the opinion of Plaintiff's purported treating physician, Dr. Gomez; (2) sufficiently developed the administrative record; and (3) properly assessed the credibility of Plaintiff's subjective complaints, I adopt the Report in full.

## I. Factual Background and Procedural History

I assume the parties' familiarity with the facts and record of prior proceedings, and restate briefly only the information necessary to explain my decision.[2] Plaintiff, who was 59 years old as of his alleged disability onset date, worked as a maintenance worker at a supermarket for approximately ten years prior to being laid off in July 2012. (R. 99, 211–12.)[3]

Plaintiff has an extensive medical history, and I recount only those portions I deem necessary to this Opinion & Order.[4] Plaintiff first sought mental health treatment in September 2013, when he entered a chemical dependence treatment program at the Emma L. Bowen

---

[2] A more detailed description of the underlying facts and procedural history is contained in Judge Freeman's Report and Recommendation, dated September 8, 2017. (Doc. 20.)

[3] "R." refers to the Social Security Administration Administrative Record, (Doc. 13).

[4] Although Plaintiff argued before the ALJ that his disability included a seizure disorder, (*see* R. 38–40), Plaintiff has not challenged the ALJ's conclusion that Plaintiff's history of seizures did not rise to the level of a severe impairment, (*see* R. 39, R&R 51–52). For that reason, I have omitted from the recitation of Plaintiff's medical history references to his seizure disorder and related treatment.

Community Service Center, also referred to as the Upper Manhattan Mental Health Center Inc. (the "Bowen Center") to seek treatment for his cocaine and alcohol dependence. Pamela Cato, M.A. completed a Psychosocial History report and noted that Plaintiff reported feelings of anxiety and depression but exhibited good appearance, relatedness and attitude; a coherent, normal rate of speech; logical, relevant thought process; fair judgment and memory; and poor impulse control. (*Id.* at 352–67.) Plaintiff was discharged from the Bowen Center's treatment program on September 16, 2014. (*Id.* at 341.)

During his time at the Bowen Center, several physicians and counselors evaluated Plaintiff for anxiety and depression. Among them was psychiatrist Ludner Pierre-Louis, M.D., who found Plaintiff to have a sad and anxious mood but otherwise concluded that Plaintiff had coherent thought process, no delusions, good attention, fair concentration and memory, and adequate impulse control. (*Id.* at 73–73.) On May 20, 2014, Dr. Agustin Gomez, another psychiatrist at the Bowen Center, provided a medical source statement for Plaintiff,[5] indicating that Plaintiff had difficulty thinking and concentrating; had poor recent memory; and suffered from feelings of guilt and worthlessness, disrupted sleep, and social withdrawal. (*Id.* at 333–37.) Dr. Gomez concluded that Plaintiff had "marked" limitations in several functional areas, including the ability to complete a workday without interruptions from psychological symptoms, and further concluded that Plaintiff was unable to work as of the time of the evaluation. (*Id.* at 336–37.) Additional evaluations from the Bowen Center were provided in late 2014 and early 2015 by therapist Dalia Bautista and psychiatrist Qi Ling, M.D., both of whom acknowledged Plaintiff's anxiety and depression but found that Plaintiff had fair memory, insight, and impulse

---

[5] A "medical source statement" is a statement from a physician or another health care professional regarding a patient's medical or mental health impairments and the impact those impairments have on the type of work-related activities the patient may or may not be able to participate in. *See Medical Source Statement*, Disability Benefits Center, https://www.disabilitybenefitscenter.org/glossary/medical-source-statement (last visited Oct. 31, 2019).

3

control. (*Id.* at 368–73 (Ling evaluation), 374–81 (Bautista evaluation).) Throughout this same time period, Plaintiff also received mental health treatment at Harlem Hospital. Multiple psychiatrists at Harlem Hospital provided medical source statements concluding that Plaintiff suffered from major depressive disorder, although the administrative record suggests that they each examined Plaintiff on only one occasion. (*See, e.g.*, *id.* at 302–04 (assessment of Deepika Singh, M.D.), 425–30 (assessment of Willy Philias, M.D.); R&R at 14–15.)

On January 21, 2014, psychologist John Laurence Miller, Ph.D., conducted a consultative psychological examination in connection with Plaintiff's application for disability benefits. (R. 328–31.) Dr. Miller determined that Plaintiff suffered from "psychiatric and substance abuse problems," including an adjustment disorder with mixed anxiety and depressed mood, but found that neither "appear[ed] significant enough to interfere with claimant's ability to function on a daily basis." (*Id.* at 330–31.) Dr. Miller further concluded that Plaintiff's prognosis was "[g]ood given continued treatment and appropriate work." (*Id.* at 331.)

Plaintiff also completed a self-assessment in the form of an Activities of Daily Living worksheet, (*id.* at 218–29), in which he reported that despite being unable to work due to depression and anxiety, he had no problems with personal care or grooming; he prepared meals approximately three times per week; and he was also able to clean, do laundry, and handle his finances, (*id.* at 219–22). Plaintiff further reported that he left his home every day and regularly used public transportation. (*Id.* at 221.) Finally, Plaintiff noted that he spent time with others approximately four times a week, and listed walking and watching television among his hobbies. (*Id.* at 222–23.)

Plaintiff filed an application for SSDI and SSI benefits on December 9 and 10, 2013, respectively, claiming disability as of July 23, 2013 due to neurological and mental health issues,

4

including epilepsy, depression, and anxiety. (*See id.* at 178–83, 186–97.) After a hearing before Administrative Law Judge ("ALJ") Michael Friedman on June 16, 2015, the ALJ denied Plaintiff's claim for benefits on July 9, 2015. (*See id.* at 36–50.) The ALJ found that while Plaintiff had a severe impairment in the form of "major depressive disorder, recurrent, moderate," (*id.* at 38), Plaintiff had no restrictions in a wide range of daily activities, including personal care, grooming, cooking, doing laundry, shopping, and managing his own finances, (*id.* at 40). Moreover, Plaintiff regularly took the subway, socialized with friends, and had a good relationship with his family. (*Id.*) The ALJ concluded that Plaintiff maintained a functional capacity to perform a full range of work at all exertional levels, with the nonexertional limitation that the work involve only "simple, routine, and repetitive tasks." (*Id.* at 42.)

Plaintiff sought review by the Appeals Council, which initially denied Plaintiff's request for review on November 2, 2015. (*Id.* at 8–13.) Plaintiff then submitted additional medical evidence post-dating the ALJ's decision, which the Appeals Council considered. (*See id.* at 6.) Among the new evidence Plaintiff submitted to the Appeals Council was an October 2015 Mental Impairment Questionnaire completed by psychiatrist Joseph Charles, M.D. (*Id.* at 558–64.) The questionnaire indicated that Plaintiff's "depressive scale score was moderate with some limitations to his functioning," including marked limitations in, among other areas, carrying out detailed instructions, maintaining attention and concentration for extended periods, and making simple work-related decisions. (*Id.* at 562–63.) The questionnaire further noted that Plaintiff was likely to miss more than three days of work monthly as a result of his impairments. (*Id.* at 564.) The Appeals Council again denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1–7.)

Plaintiff filed this action on May 16, 2016. (Doc. 1.) I referred the case to Judge

5

Freeman on June 21, 2016. (Doc. 8.) Plaintiff filed his motion for judgment on the pleadings on December 2, 2016, (Docs. 14–15), and Defendant cross-moved for judgment on the pleadings on January 31, 2017, (Docs. 16–17). Plaintiff filed a reply on February 15, 2017, (Doc. 18); Defendant did not file a reply on his cross-motion. Judge Freeman issued her Report on September 8, 2017. (Doc. 20.) Plaintiff filed his objections on September 21, 2017, (Doc. 21), and Defendant filed his response on October 5, 2017, (Doc. 22).

## II. Legal Standards

### A. *Review of the Commissioner's Decision*

In reviewing a social security claim, "it is not [the court's] function to determine *de novo* whether plaintiff is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007). Instead, a reviewing court considers merely whether the correct legal standards were applied and whether substantial evidence supports the decision. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence" means "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). It is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id*. (internal quotation marks omitted).

### B. *Disability Standard*

To be considered disabled under the SSA, a claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least 12 months, that is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. §§ 423(d)(1)(A), (2)(A). The Commissioner has established a five-step evaluation process to determine whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).

### C. *Review of the Magistrate Judge's Report*

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1). A party may make objections to a report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). The district court "may adopt those portions of the report to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)). "If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Bush v. Colvin*, No. 15 Civ. 2062 (LGS) (DF), 2017 WL 1493689, at *4 (S.D.N.Y. Apr. 26, 2017) (quoting *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)).

A party's objection "must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "[T]he court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id.* (internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (noting that reviewing court "is only obliged to review the Report for clear error" where "objections largely reiterate the arguments made to, and rejected by" the magistrate judge); *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations.").

### III. Discussion

Plaintiff objects to Judge Freeman's Report on three grounds: (1) the ALJ improperly declined to assign controlling weight to the opinion of Plaintiff's treating physician, Dr. Gomez; (2) the ALJ failed to sufficiently develop the administrative record; and (3) the ALJ improperly assessed the credibility of Plaintiff's subjective complaints. (Pl.'s Obj. 3–6.)[6] Plaintiff, however, has not demonstrated that Judge Freeman's findings with respect to these three issues were incorrect. I have reviewed the remainder of Judge Freeman's Report for clear error and find none.

#### A. *Opinion of Dr. Gomez*

Plaintiff first challenges the ALJ's "reject[ion]" of the medical opinion of psychiatrist Dr. Agustin Gomez, whose opinion Plaintiff argues merited controlling weight because Dr. Gomez qualified as a one of Plaintiff's treating physicians. (Pl.'s Obj. 1.) Under the "treating physician rule," the medical opinion of a treating source regarding the "nature and severity of [a claimant's] impairments" shall be accorded "controlling weight" where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, not all physicians who provide a medical opinion with respect to an application for disability benefits qualify as "treating physicians." As the Second Circuit has explained, where a physician has seen a patient only "once or twice," his opinion "should not be given the extra weight accorded a treating physician" because he does not have an ongoing relationship with the claimant sufficient to place him "in a unique position to make a complete

---

[6] "Pl.'s Obj." refers to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation, filed September 21, 2017. (Doc. 21.)

and accurate diagnosis of his patient." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983); *see also* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.").

As Judge Freeman concluded, the administrative record does not support a finding that Dr. Gomez qualified as a treating physician. (*See* R&R 44–46.) Plaintiff argues that because he "was seen regularly at the same facility where Dr. Gomez works"—the Bowen Center—Dr. Gomez's opinion is entitled to controlling weight. (Pl.'s Obj. 1.) But the fact that a claimant may have an ongoing treatment relationship with a particular facility does not mean that he has such a relationship with every physician in that facility such that each of those physicians may be considered a treating physician. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (summary order) (affirming ALJ's refusal to give opinions of two physicians controlling weight where "one of the physicians . . . had only examined [plaintiff] once, while the other . . . had only four treatment notes bearing his signature," despite the fact that plaintiff had long been treated at the facility where those two physicians worked). As Judge Freeman explained, there is no indication in the administrative record that Plaintiff had an ongoing treatment relationship with Dr. Gomez specifically. Instead, the medical records obtained from the Bowen Center suggest that Dr. Gomez may have examined Plaintiff only once, for the precise purpose of submitting a medical source statement.[7]

---

[7] Dr. Gomez's medical source statement was made in the form of a Mental Impairment Questionnaire (a document created by the law firm representing Plaintiff in this action), which largely consists of checkboxes next to a list of symptoms or impairments that a patient may have. (*See* R. 333–37.) In response to the question "How often do you see your patient?" on the questionnaire, Dr. Gomez noted that Plaintiff was an "old patient of the clinic." (*Id.* at 333.)

10

Moreover, even if Dr. Gomez did qualify as a treating physician, I find that the ALJ set forth sufficient reasons to justify his decision to assign Dr. Gomez's opinion only "limited persuasive weight." (R. 45.) "Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32 (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)). Before an ALJ may afford the opinion of a treating physician less than controlling weight, he must consider various factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical support for the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's level of specialization in the area; and (6) other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)–(6); *see also Schisler*, 3 F.3d at 567. However, the ALJ need not explicitly address each factor in his analysis. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." (citing *Halloran*, 362 F.3d at 31–32)); *Suarez v. Colvin*, 102 F. Supp. 3d 552, 574 (S.D.N.Y. 2015) ("[I]n rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered . . . .").

Here, the ALJ noted that Plaintiff had long been a patient at the Bowen Center but concluded that Dr. Gomez's opinion was inconsistent with the record as a whole and also noted additional factors that undermined Dr. Gomez's opinion. (R. 45–46.) Citing to specific portions of the administrative record, the ALJ explained that Dr. Gomez's finding of moderate-to-marked

11

limitations in various functional areas conflicted with treatment records and findings made by other physicians who examined Plaintiff. (*See id*. at 46.) The ALJ also explained that Dr. Gomez's opinion was "supported only by [Plaintiff's] subjective complaints." (*Id*.) I find these reasons sufficient to support the ALJ's decision to afford less than controlling weight to Dr. Gomez's opinion. *See Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (holding that ALJ was not required to give treating physician's opinion controlling weight where it was "inconsistent with [the physician's] own prior opinions and the findings of the other medical examiners, and was based on [plaintiff's] subjective complaints" (citing *Halloran*, 362 F.3d at 32)); *Roma v. Astrue*, 468 F. App'x 16, 18–19 (2d Cir. 2012) (summary order) (holding that ALJ "properly declined to accord controlling weight" to opinion of treating physician where assessment "was inconsistent in material respects with other substantial evidence" and "was doubtful as it was based largely upon [plaintiff's] subjective responses"). I therefore conclude that, even assuming that Dr. Gomez qualified as a treating physician, the ALJ did not violate the treating physician rule in his assessment of Dr. Gomez's opinion.

### B. *Development of the Administrative Record*

Plaintiff contends that the Commissioner failed to properly develop the administrative record in two respects: first, he argues that the ALJ should have taken additional steps to obtain further treatment records from the Bowen Center, and second, he contends that the Appeals Council improperly declined to review the ALJ's decision after Plaintiff submitted new and material evidence for the Council's consideration. (*See* Pl.'s Obj. 2–3, 5–6.)

As a general rule, an ALJ has an affirmative duty to develop the factual record. *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999). Due to the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and

develop the facts and develop the arguments both for and against the granting of benefits.'" *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004)). Moreover, "it is the well-established rule in our circuit" that such a duty exists "[e]ven when a claimant is represented by counsel." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

With respect to treatment records from the Bowen Center, the Commissioner made two attempts to acquire additional information from the facility—first on December 12, 2013, and again on December 23, 2013. (*See* R. 64–65.) This is all that the governing regulations require. *See* 20 C.F.R. §§ 404.1512(d), 416.912(d) (explaining that the Commissioner "will make an initial request for evidence from your medical source and . . . if the evidence has not been received, [] will make one follow-up request to obtain the medical evidence necessary to make a determination"); *see also Cruz v. Astrue*, 941 F. Supp. 2d 483, 496 (S.D.N.Y. 2013) (concluding that ALJ "fulfilled his duty" to develop record by twice requesting medical records from plaintiff's treating physician). Plaintiff insists that despite these two requests to the Bowen Center, the ALJ had an obligation to seek updated treatment records when Plaintiff testified at his June 16, 2015 hearing before the ALJ that he saw a psychiatrist at the Bowen Center monthly and a therapist bi-weekly. (Pl.'s Obj. 2.) However, not only did the Commissioner make the requisite two attempts to secure medical records from the Bowen Center in late 2013 but the administrative record also contains extensive treatment records from the Bowen Center from as late as May 2015. (*See, e.g.*, R. 338–44, 368–403.)[8] Ultimately, the ALJ made his disability

---

[8] Although, as discussed above, the ALJ's obligation to develop the record exists even where a claimant is represented by counsel, *see Moran*, 569 F.3d at 112, it is worth noting that Plaintiff's counsel made several submissions of Bowen Center records prior to the ALJ hearing and, during the hearing, made no objection regarding alleged missing records from the Bowen Center—or from any other institution—when the ALJ asked whether counsel had "any comments or objections to anything in [Plaintiff's] file." (R. 80.)

13

determination based on extensive medical evidence, including treatment notes, treating source opinions, and consultative reports from numerous facilities (including the Bowen Center) and physicians, covering the entire relevant time period. Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (internal quotation marks omitted).

Plaintiff also contends that remand is warranted based on new evidence that he submitted to the Appeals Council in the form of an October 26, 2015 Mental Impairment Questionnaire from psychiatrist Joseph Charles. (R. 558–64.) The Appeals Council will agree to review an ALJ's determination if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970, 416.1470; *see also Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Here, in its March 28, 2016 Order, the Appeals Council explained that it considered Dr. Charles's opinion, along with other additional records submitted by Plaintiff, (R. 2, 5 6), but concluded that review of the ALJ's decision was not warranted because the additional evidence did not render the ALJ's "action, findings, or conclusion [] contrary to the weight of the evidence of record," (*id.* at 2). After the Appeals Council denied review, the new evidence considered by the Appeals Council became part of the administrative record. *See Perez*, 77 F.3d at 45 ("[W]e hold that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision.").

Thus, the only question before this Court—and before Judge Freeman—was whether, considering the expanded administrative record, which included Dr. Charles's October 26, 2015 opinion, the ALJ's decision was supported by substantial evidence. *See id.* at 46 ("When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]."). As noted above, this is a very deferential inquiry, *see supra* Part II.A, and I conclude that Dr. Charles's opinion does not render the ALJ's decision contrary to the weight of the expanded record. Like Dr. Gomez's opinion, Dr. Charles's opinion was offered in the form of a preprinted Mental Impairment Questionnaire, in which Dr. Charles largely checked boxes to identify Plaintiff's symptoms. (*See* R. 558–64.) Such a standardized form is of limited evidentiary value, and courts routinely discount medical opinions offered by similar preprinted forms. *See Sabater v. Colvin*, No. 12-CV-4594 (KMK) (JCM), 2016 WL 1047080, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) ("It also bears noting the limited value of the standardized check-box forms, which are considered 'only marginally useful for purposes of creating a meaningful and reviewable factual record.'" (quoting *Halloran*, 362 F.3d at 31 n.2)); *see also Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (noting that physician's report "prepared on a standardized multiple-choice form issued by the New York State Office of Temporary and Disability Assistance" was "only marginally useful" (internal quotation marks omitted)). The administrative record also does not establish that Plaintiff and Dr. Charles had an ongoing treatment relationship. Therefore, considered in the context of the entire record, I conclude that the new evidence submitted to the Appeals Council does not warrant remand.

15

## C. *Credibility of Plaintiff's Subjective Complaints*

Finally, Plaintiff challenges the ALJ's assessment that Plaintiff's testimony at his June 16, 2015 hearing before the ALJ was "not entirely credible" concerning the intensity, persistence, and limiting effects of his symptoms. (R. 43.)[9] The ALJ is responsible for evaluating a claimant's credibility and deciding whether to credit or discredit his subjective estimate of the degree of his impairment. *See Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). The applicable regulations provide for a two-step process for evaluating a Plaintiff's self-reported testimony about his own symptoms:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment, i.e., an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce the individual's pain or other symptoms. . . . Once an underlying medical impairment that could reasonably be expected to produce the symptoms is shown, the second step is for the adjudicator to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work.

*See Sarchese v. Barnhart*, No. 01-CV-2172(JG), 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002) (internal citations and quotation marks omitted). The ALJ "is not require[d] to accept the claimant's subjective complaints without question," *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010), but rather must consider "all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony," *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms Plaintiff described, (R. 43); however, the ALJ

---

[9] During the hearing, Plaintiff testified that he suffered from anxiety and depression and struggled to focus, concentrate, and remember things. (R. 83–84.) He also stated that he could only assist "a little bit" with chores around the home, (*id.* at 85), and that while he took the subway unaccompanied to the hearing, doing so made him "really nervous," (*id.* at 84).

16

found Plaintiff's subjective complaints as to the intensity of those symptoms not wholly credible for three reasons. First, the ALJ noted that Plaintiff's complaints contradicted the objective medical evidence in the record, including the assessments of several physicians, which determined that Plaintiff's symptoms were less debilitating than Plaintiff contended and that, among other things, Plaintiff's attention, concentration, and memory were largely intact. (*See id.* at 43–45.) Plaintiff argues that, based on the regulations in effect at the time the ALJ issued his decision, a credibility determination "cannot be made solely on the basis of objective medical evidence," (Pl.'s Obj. 3–4 (internal quotation marks omitted)); however, Plaintiff fails to address the other reasons proffered by the ALJ for discounting Plaintiff's subjective complaints.

The ALJ also explained that Plaintiff's testimony was undercut by his own responses in his Activities of Daily Living report, which suggested that the daily activities that Plaintiff acknowledged he was capable of performing—including grooming, cooking, cleaning, doing laundry, grocery shopping, using public transportation, attending medical appointments, and spending time with friends and family—were "not limited to the extent one would expect, given [Plaintiff's testimony] of disabling symptoms and limitations." (R. 47, 218–29.) Finally, the ALJ noted that Plaintiff's treatment regimen was relatively conservative and had remained constant over time. (*See id.* at 48 (explaining that Plaintiff's "treatment has essentially been routine and/or conservative in nature" and that Plaintiff's "psychotropic medication regime has remained essentially unchanged since his initiation of mental health treatment in 2013").) While a conservative treatment regimen, without more, is insufficient to justify the denial of disability benefits, *see Burgess*, 537 F.3d at 129, an ALJ may consider it in combination with other factors, *cf. id.* ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may [] help to support the Commissioner's conclusion that the claimant is not disabled if that fact is

17

accompanied by other substantial evidence in the record . . . .").

In making his credibility determination, the ALJ appropriately considered, among other things, the objective medical evidence, Plaintiff's daily activities, and Plaintiff's conservative treatment regimen. *See* 20 C.F.R.§ 404.1529(c)(2) (permitting consideration of "objective medical evidence"); *id.* § 404.1529(c)(3)(i) (consideration of "daily activities"); *id.* § 404.1529(c)(3)(iv)–(v) (consideration of medication and treatment). Based on the evidence cited by the ALJ and Judge Freeman, I find that substantial evidence supported the ALJ's conclusion that Plaintiff's complaints of extreme debilitation were not fully credible.

### D. *Remainder of the Report*

I have reviewed for clear error the remainder of Judge Freeman's thorough Report—including the conclusion that Plaintiff waived any argument that the ALJ erred in overlooking evidence of Plaintiff's seizure disorder[10]—and find none.

### IV. **Conclusion**

Based upon the above, I adopt the Report in its entirety. Plaintiff's motion for judgment on the pleadings, (Doc. 14), is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, (Doc. 16), is GRANTED. The Clerk of Court is respectfully directed to enter judgment on behalf of Defendant and close this case.

SO ORDERED.

Dated: November 1, 2019
      New York, New York

*Vernon S. Broderick*
Vernon S. Broderick
United States District Judge

---

[10] As noted above, *see supra* n.4, Plaintiff does not object to Judge Freeman's determination that Plaintiff waived any challenge to the ALJ's conclusions with respect to his seizure disorder.